**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| OVANOVA, INC.<br>607 Sawmill Rd<br>Cedar Grove, NC 27231<br><br>OVANOVA ENERGY CORPORATION<br>607 Sawmill Rd<br>Cedar Grove, NC 27231<br><br>OVANOVA CONSTRUCTION SERVICES<br>LLC,<br>607 Sawmill Rd<br>Cedar Grove, NC 27231<br><br>OVANOVA SOLAR CORPORATION, and<br>607 Sawmill Rd<br>Cedar Grove, NC 27231<br><br>ABC CORPS., 1-10,<br>Address Unknown<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>AGRICULTURE<br>1400 Independence Avenue, S.W.<br>Washington, DC 20250;<br><br>THOMAS J. VILSACK<br>in his official capacity as Secretary of United<br>States Department of Agriculture<br>1400 Independence Avenue, S.W.<br>Washington, DC 20250;<br><br>XOCHITL TORRES SMALL<br>in her official capacity as Under Secretary<br>for Rural Development<br>1400 Independence Avenue S.W.<br>Washington, DC 20250; | Case No. 24-2769 |

1

NATIONAL RENEWABLE ENERGY
LABORATORY
901 D. Street, S.W., Suite 930
Washington, DC 20024;

MARTIN KELLER
in his official capacity as Director of the
National Renewable Energy Laboratory
901 D. Street, S.W., Suite 930
Washington, DC 20024;

 DEBRA YOCUM
in her official capacity as Branch Chief –
Field Operations, Rural Business
Cooperative Services, USDA Rural
Development
1400 Independence Ave. SW, Rm 5803-S
STOP 3201
Washington, DC 20250;

and

JOHN DOES 1-10,
in their official capacities as USDA
representatives,
Address Unknown

*Defendants*.

## COMPLAINT

Plaintiffs Ovanova, Inc., Ovanova Energy Corporation, Ovanova Construction Services LLC, Ovanova Solar Corporation, and ABC Corp. 1-10 (collectively, "Plaintiffs" or "Ovanova"), for their complaint against Defendants United States Department of Agriculture, Thomas J. Vilsack, Xochitil Torres Small, National Renewable Energy Laboratory, Martin Keller, Debra Yocum, and John Does 1-10 (each a "Defendant" and collectively "Defendants"), allege, by and through their attorneys, as follows:

## INTRODUCTION

1.      Plaintiffs specialize in providing renewable energy solutions to rural businesses and agricultural producers, focusing on the procurement, installation, and maintenance of solar power and battery storage equipment.

2.      Plaintiffs have established themselves as a leading developer in the nation for Rural Energy for America Program (REAP) grant applications administered by the United States Department of Agriculture (USDA), having submitted over $100 million in applications. The Plaintiff entities are known for their innovative approach to stacking incentives created by the Inflation Reduction Act, making renewable power accessible to low-income, disadvantaged and distressed rural communities.

3.      Plaintiffs' technical expertise includes implementing DC-coupled storage systems for increased efficiency, utilizing multiple smaller hybrid inverters for enhanced system reliability and resilience, and designing systems that prioritize energy resiliency and grid support.

4.      Plaintiffs have successfully completed over 100 projects of similar nature to those involved in this dispute, including eight previously awarded REAP projects, demonstrating their competence in developing, designing, financing, constructing, commissioning, and maintaining renewable energy systems.

5.      This case concerns a dispute between Plaintiffs and the USDA REAP grant program. Plaintiffs, acting on behalf of numerous rural small businesses and agricultural producers, submitted multiple REAP grant applications for innovative solar and battery storage projects designed to enhance energy resilience and grid stability in rural communities.

6.      The controversy arises from the allegations that the USDA, in conjunction with the National Renewable Energy Laboratory (NREL), has retroactively applied new technical merit criteria without proper notice or rulemaking procedures, inconsistently evaluated similar projects,

resulting in arbitrary and capricious decision-making, misunderstood or failed to properly assess innovative technical approaches in solar and battery storage integration, inappropriately applied utility-scale project criteria to small-scale, on-site generation systems, and rescinded a previously approved grant, raising concerns about the reliability and consistency of the USDA's decision-making process.

7.     These actions have not only jeopardized the viability of numerous renewable energy projects in rural areas but also violated the USDA's statutory mandate under the Rural Electrification Act and the 2008 Farm Bill to promote and support innovative renewable energy solutions in rural communities.

8.     Plaintiffs therefore seek judicial review of the USDA's actions under the Administrative Procedure Act (APA), a declaratory judgment clarifying the rights and legal relations between the parties, and a writ of mandamus compelling the USDA to properly perform its duties in evaluating REAP grant applications.

9.     The USDA's actions have undermined the integrity of the REAP program, and deprived rural communities of crucial renewable energy infrastructure, and exposed the agency to significant legal vulnerability on the basis that the USDA's evaluation process for REAP grant applications is fundamentally flawed and blatantly violates principles of administrative law and due process.

10.     The USDA's actions demonstrate a gross dereliction of duty and a willful disregard for its statutory mandate to promote renewable energy in rural areas.

11.     The USDA's actions have created an untenable situation that demands immediate judicial scrutiny and corrective measures. The agency's conduct represents a clear breach of its statutory duties and a failure to engage in reasoned decision-making.

12.     This pattern of arbitrary, capricious, and unlawful behavior not only jeopardizes the viability of crucial renewable energy projects in rural areas but also undermines the very foundations of administrative law and due process.

13.     In conclusion, this case raises important questions about the proper administration of federal grant programs, the balance between agency discretion and statutory mandates, and the role of innovative renewable energy solutions in promoting rural development and grid resilience.

14.     The outcome of this litigation could have far-reaching implications for the future of renewable energy development in rural America and the broader implementation of federal clean energy policies.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case arises under the laws of the United States, specifically the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, the Rural Electrification Act, as amended by the 2008 Farm Bill, and the regulations governing the Rural Energy for America Program (REAP), 7 CFR § 4280, Subpart B.

16.     Additionally, this Court has jurisdiction under 28 U.S.C. § 1361 to issue writs of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

17.     The Court also has authority to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202, as an actual controversy exists between the parties concerning their respective rights and obligations under federal law.

18.     Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise

to the claim occurred in this district, and the defendant, the United States Department of Agriculture (USDA), is an agency of the United States with its headquarters located in Washington, D.C.

19.     Specifically, key decision-makers in the USDA, including the Secretary of Agriculture and the Under Secretary for Rural Development, who were likely involved in or had oversight of the decisions being challenged, are based in Washington, D.C.

20.     The administrative record, which is crucial for judicial review under the APA, is likely maintained at the USDA's headquarters in Washington, D.C., making it the most appropriate venue for efficient review of the agency's actions.

21.     Furthermore, venue is appropriate in this Court as it has the authority to review agency actions and compel agency action unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706(1) of the APA.

22.     Plaintiffs seek such review and compulsion regarding the USDA's administration of the REAP program and its evaluation of grant applications submitted by the Plaintiff entities and other similarly situated plaintiffs. This case involves significant questions about the implementation of federal renewable energy policies, which are typically formulated and overseen in Washington, D.C., and the D.C. federal court's expertise in handling complex administrative law cases makes it the most appropriate forum for this matter.

## PARTIES

23.     Plaintiff OVANOVA, INC., entity Id. 5814638, is a domestic corporation duly organized and existing under the laws of Delaware. It is in good standing with the Delaware Secretary of State.

24.     Plaintiff OVANOVA ENERGY CORPORATION, entity Id. 3715123, is a domestic corporation duly organized and existing under the laws of the State of Delaware. It is in good standing with the Delaware Secretary of State.

25.     Plaintiff OVANOVA CONSTRUCTION SERVICES, LLC, entity Id. 2627457, is a domestic limited liability company duly organized and existing under the laws of North Carolina. It is in good standing with the North Carolina Secretary of State.

26.     Plaintiff OVANOVA SOLAR CORPORATION, entity Id. 6288838, is a domestic corporation duly organized and existing under the laws of Delaware. It is in good standing with the Delaware Secretary of State.

27.     Plaintiffs ABC CORPS. 1-10 are corporations, partnerships, or other business entities whose true names and capacities are unknown to Plaintiffs at this time. Plaintiffs will amend this Complaint to allege the true names and capacities of these Doe Plaintiffs when they have been ascertained. Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named Plaintiffs has been injured and suffered damages as a result of Defendants' actions, and that such injuries and damages were proximately caused by Defendants.

28.     Defendant UNITED STATES DEPARTMENT OF AGRICULTURE (USDA) is an executive department and agency of the United States government, headquartered in Washington, D.C. The USDA is sued in its official capacity. The USDA is responsible for developing and executing federal laws related to farming, forestry, rural economic development, and food. In this case, the USDA is specifically involved through its administration of the Rural Energy for America Program (REAP).

29.     Defendant THOMAS J. VILSACK is sued in his official capacity as Secretary of Agriculture. As Secretary, he is responsible for the overall direction and supervision of the USDA, including its administration of the REAP program.

30.     Defendant XOCHITL TORRES SMALL is sued in her official capacity as Under Secretary for Rural Development. In this role she oversaw the USDA's Rural Development mission area, including the administration of the REAP program, until her confirmation as Deputy Secretary of USDA on or about July 11, 2023.

31.     Defendant NATIONAL RENEWABLE ENERGY LABORATORY (NREL) is a national laboratory of the U.S. Department of Energy, operated by the Alliance for Sustainable Energy, LLC. NREL is sued in its capacity as a collaborator with the USDA in conducting technical reviews of REAP grant applications.

32.     Defendant MARTIN KELLER is sued in his official capacity as Director of the National Renewable Energy Laboratory. As Director, he is responsible for the overall management and operation of NREL, including its collaboration with the USDA on REAP grant application reviews.

33.     Defendant DEBRA YOCUM is sued in her official capacity as Branch Chief – Field Operations, Rural Business Cooperative Services, USDA Rural Development. In this role, she is responsible for overseeing field operations related to rural business and cooperative services, including aspects of the REAP program implementation.

34.     Defendants JOHN DOES 1-10 are sued in their official capacities as agency representatives whose identities are currently unknown to Plaintiffs. These individuals are believed to have been involved in the decision-making processes, evaluations, or implementations of policies related to the REAP program that are at issue in this lawsuit. Plaintiffs will amend this

Complaint to include the true names and capacities of these Doe Defendants when they have been ascertained.

35.     The actions and decisions of these Defendants, in conjunction with the USDA, form the basis of this lawsuit, including but not limited to their roles in evaluating, approving, denying, or rescinding REAP grants, and in applying technical merit criteria to grant applications.

## PROCEDURAL REQUIREMENTS

### Exhaustion of Administrative Remedies

36.     Ovanova has exhausted all available administrative remedies prior to initiating this legal action, notwithstanding the atypical circumstances surrounding the administrative process. Specifically, Ovanova was expressly directed by USDA representatives to refrain from pursuing the standard appeals process, as it was explained to them by the USDA representatives that such an approach would have resulted in a significantly protracted timeline compared to the alternative of resubmission.

37.     This directive was memorialized in email correspondence from USDA officials, constituting a formal, documented request to deviate from the conventional administrative remedies.

38.     Ovanova contends, upon information and belief, that this unusual request to circumvent the established appeals process was made in furtherance of a broader scheme orchestrated by the USDA, as delineated in the complaint.

39.     This scheme, characterized by the retroactive application of new technical merit criteria, inconsistent evaluations, and the rescission of previously approved grants, appears designed to disadvantage innovative renewable energy projects in rural areas, contrary to the USDA's statutory mandate.

40.     The doctrine of exhaustion of administrative remedies is predicated on the principle that parties must avail themselves of all administrative channels before seeking judicial intervention. However, courts have recognized exceptions to this doctrine when pursuit of administrative remedies would be futile or when the administrative body has evidenced bias or predetermined the issue.

41.     In the present case, the USDA's explicit instruction to bypass the appeals process, coupled with the apparent predetermined nature of the evaluations as evidenced by the inconsistent application of criteria, strongly suggests that further administrative proceedings would have been an exercise in futility.

42.     Moreover, the USDA's conduct in this matter raises serious questions about the adequacy and fairness of the available administrative remedies. By directing Ovanova to resubmit applications rather than appeal, the USDA effectively circumvented its own established procedures, depriving Plaintiffs of due process and the opportunity for a fair hearing within the administrative framework.

43.     Given these extraordinary circumstances, Plaintiffs have satisfied the exhaustion requirement to the fullest extent practicable and permissible under the law. The documented communication from USDA representatives, instructing Ovanova to forgo the appeals process, serves as compelling evidence of Plaintiffs' good-faith efforts to comply with administrative procedures, only to be thwarted by the very agency responsible for administering those procedures.

44.     In light of these factors, Plaintiffs contend that they have effectively exhausted their administrative remedies, or alternatively, that they should be excused from strict compliance with the exhaustion requirement due to the USDA's conduct, which has rendered the administrative process inadequate and biased.

45.     This position is further bolstered by the urgent nature of the relief sought, particularly in view of the impending fiscal year-end and the potential for irreparable harm to Plaintiffs' business interests.

**Final Agency Action**

46.     The USDA's decisions constitute final agency actions subject to judicial review under the Administrative Procedure Act, 5 U.S.C. § 704. Specifically, the USDA's denials of Ovanova's REAP grant applications represent the consummation of the agency's decision-making process, as evidenced by the USDA Commitment of Funds Letter issued to Ovanova on April 5, 2024, and subsequent rescission of the award. The rescission of the award made on April 13, 2024, to La Finca Naturals, LLC, a client of Ovanova, ostensibly for the purpose of a technical merit review by NREL, constitutes a final agency action that determined the rights and obligations of the grant recipient.

47.     However, the NREL technical merit review did not exist, nor was required, at the time that the USDA grant was submitted, nor when it was approved.

48.     The USDA only disclosed the existence of a technical merit review process subsequent to the grant of the award, in its rationale for the rescission made on April 13, 2024.

49.     When Ovanova subsequently asked about the ruleset applied for the technical review, the USDA inexplicably sent a technical merit review ruleset document which contained a watermark identifying the document as a "draft" dated April 5, 2024, more than six months after the grant was submitted under the then-existing rulesets.

50.     The draft appears to have been retroactively applied, after the approval of the grant. The USDA has still not responded to La Finca's latest submission.

51.     These final agency actions have direct and immediate legal consequences for the plaintiffs, affecting their rights and obligations under the REAP program and causing concrete injuries.

## STANDING

52.     Plaintiffs have standing to bring this action, as they meet the requirements of injury-in-fact, causation, and redressability. Plaintiffs have suffered concrete and particularized injuries, including direct financial losses of approximately $100 million due to the denial and rescission of REAP grants, operational costs and disruptions amounting to $2 million resulting from the USDA's actions, loss of business opportunities and partnerships estimated at $500 million, and reputational damage affecting future business prospects. These injuries are directly traceable to the USDA's actions in denying and rescinding REAP grants, as well as the agency's inconsistent and arbitrary application of evaluation criteria. The relief sought in this lawsuit, including the setting aside of the USDA's decisions, declaratory judgment, and mandamus, would directly redress the plaintiffs' injuries by allowing for a fair re-evaluation of their REAP grant applications and restoring their grant funding.

53.     Each named plaintiff has suffered distinct and palpable injuries that confer standing to challenge the USDA's actions. The inclusion of ABC Corp. as a plaintiff represents other associated Ovanova companies, clients and or similarly situated REAP grant plaintiffs who have been adversely affected by the USDA's actions and who may join the lawsuit as it progresses.

## FACTUAL BACKGROUND

## <u>Overview of the REAP Program</u>

54.     The Rural Energy for America Program (REAP) is a grant program administered by the United States Department of Agriculture (USDA) under the Rural Business-Cooperative

Service. Authorized under 7 U.S.C. § 8107, REAP is specifically designed to promote renewable energy systems for agricultural producers and rural small businesses. The program's primary purpose is to increase American energy independence by promoting the use of renewable energy resources and improving the energy efficiency of small businesses and agricultural producers in rural areas. Eligibility for REAP is limited to agricultural producers and rural small businesses, as defined by the USDA. The program provides substantial financial support, offering grants of up to 50 percent of total eligible project costs for renewable energy systems and energy efficiency improvements.

55.     The application process for REAP is comprehensive, requiring plaintiffs to submit detailed project proposals that include technical specifications, financial projections, and environmental impact assessments. These applications undergo a rigorous evaluation process based on three key criteria: technical merit, financial feasibility, and environmental benefits. To ensure thorough and expert assessment of the technical aspects, the USDA collaborates NREL to conduct technical reviews of REAP grant applications. This collaboration enhances the program's ability to identify and support projects with the highest potential for success and impact.

56.     The REAP program operates within a well-defined regulatory framework, governed by regulations outlined in 7 CFR § 4280, Subpart B. This regulatory structure provides clear guidelines for the program's administration, ensuring consistency and fairness in the application and evaluation processes. Through its comprehensive approach, REAP plays a crucial role in advancing renewable energy adoption and energy efficiency in rural America, contributing to both economic development and environmental sustainability in these areas.

**<u>Ovanova's REAP Grant Applications</u>**

57.     Ovanova, a renewable energy developer specializing in solar and battery storage systems, has been actively involved in the REAP program, submitting numerous grant applications on behalf of rural small businesses and agricultural producers. The company's engagement with the REAP program has been substantial, with over $100 million in grant applications submitted, positioning Plaintiffs as a leading developer in the program.

58.     Plaintiffs' REAP grant applications primarily focused on innovative solar and battery storage projects designed to enhance energy resilience and grid stability in rural communities. These projects featured advanced technical elements, including DC-coupled systems for increased efficiency, multiple smaller inverters for enhanced system reliability and resilience, and designs prioritizing energy resiliency and grid support.

59.     The company's applications leveraged a combination of REAP grants, federal tax credits, and other incentives to make renewable energy projects financially viable for rural businesses. Plaintiffs prepared comprehensive application packages for each project, including detailed feasibility studies, technical reports, and financial analyses.

60.     Initially, Plaintiffs experienced success with the REAP program, with several applications approved and some projects successfully installed. However, later applications faced challenges, including denials based on allegedly implemented technical merit criteria by the USDA which were un-announced, unclear, and retroactively applied, leading to disputes with the USDA.

61.     Notable applications included the rescinded approved grant to La Finca Naturals, LLC, the Futrell Farms, LLC project, a 302.4kW DC Solar PV with 1,086.8kWh Battery Storage system which failed technical merit four times despite applying the most updated "ruleset" and two personal meetings with extra feedback from USDA and NREL officials, and similar projects

for DTI Solutions and Cookeville Auto Salvage, which received inconsistent evaluations from the USDA.

62.     In total, Plaintiffs have submitted approximately over sixty applications which are now ostensibly retroactively subject to an unclear, unstated, and inconsistently applied technical merit review by the USDA and NREL.

63.     The denials of Plaintiffs' REAP grant applications, and the recession of the La Finca Naturals, LLC, grant award, have had a substantial impact on the company's projects and the rural communities they aimed to serve. These arbitrary and capricious decisions jeopardize substantial tax benefits and the economic viability of the renewable energy projects Plaintiffs had proposed.

### USDA's Evaluation Process and Decisions

64.     The USDA's evaluation process for REAP grant applications involves a complex set of criteria and procedures that have recently undergone significant changes, leading to controversy and legal challenges. The process centers around a technical merit review conducted in collaboration with NREL. This review assesses various aspects of proposed projects, including the qualifications of the project team, agreements and permits, resource assessment, design, engineering, and economics, project development, equipment procurement and installation, and operations and maintenance.

65.     Applications are evaluated based on technical merit, financial feasibility, and environmental benefits, though the specific criteria and their application have been subject to change and dispute. The USDA employs a pass/fail system where each area of the technical report receives either a "pass", "pass with conditions" or "fail" determination. A project whose technical report receives a "fail" in any one technical report area is considered to be without technical merit.

This technical merit review, applied only to applications containing batteries, consistent with all of Plaintiffs' applications, is conducted by NREL, effectively rendering them capable of nullifying an entire application with one failure on any part of the review based on a ruleset that was never shared or implemented despite Plaintiffs' consistent requests for this information.

66.     The information provided to Plaintiffs from North Carolina USDA State Director Bill Tew on April 9, 2023, (the "draft copy" of the ruleset) and the information provided by Tennessee USDA Rural Development Coordinator Charles Morris on June 18, 2024, were applied to the Futrell Farms application only to lead to more capricious and arbitrary reasons for denial which are found in neither the draft ruleset shared by Bill Tew or the subsequent ruleset shared by Charles Morris.

67.     Recent decisions by the USDA have raised concerns about the consistency and fairness of the evaluation process. These concerns include: inconsistent evaluations of similar projects with identical wording and technical specifications, raising questions about the objectivity of the review process, misunderstanding of technical innovations, particularly in solar and battery storage integration, such as DC-coupling and the use of multiple smaller inverters, inappropriate application of utility-scale project criteria to small-scale, on-site generation systems, leading to unfair evaluations, and the rescission of a previously approved grant, raising concerns about the reliability and consistency of the USDA's decision-making process.

68.     These decisions have had significant impacts on plaintiffs like Ovanova and the rural communities they aim to serve, jeopardizing substantial tax benefits and the economic viability of renewable energy projects. The inconsistencies and apparent misunderstandings in the evaluation process have become central to legal challenges against the USDA's administration of

the REAP program, with plaintiffs arguing that these issues undermine the integrity of the program and violate principles of administrative law.

## **Retroactive Application of New Criteria**

69.     The USDA's recent implementation of new technical merit criteria and their retroactive application to existing REAP grant applications has become a major point of contention in the administration of the program. This retroactive application raises significant legal and procedural concerns that form a central part of the challenge against the USDA's handling of the REAP program.

70.     The USDA, in the recorded collaboration with NREL, implemented new technical merit criteria for evaluating REAP grant applications. However, these new criteria were allegedly applied without proper notice to plaintiffs or adherence to formal rulemaking procedures. This lack of notice is a crucial issue, as it violates the Administrative Procedure Act's requirements for notice and comment rulemaking.

71.     The retroactive application of these new criteria extended not only to new applications but also to previously submitted and, in some cases, previously approved applications. This has resulted in the denial of applications and the rescission of a previously approved grant, significantly impacting plaintiffs who had relied on the original criteria. The case of La Finca Naturals, LLC illustrates this issue, where their application, designed based on the original criteria, was later evaluated using new standards that were not in place at the time of submission.

72.     This retroactive application of the alleged ruleset raises several legal concerns. It violates the principle of fair notice, derived from the Due Process Clause of the Fifth Amendment. Additionally, the inconsistent application of criteria across similar projects constitutes arbitrary and capricious decision-making under the Administrative Procedure Act.

73.     The USDA has attempted to justify these changes as necessary for ensuring the technical merit of funded projects. However, plaintiffs argue that this justification does not address the procedural and fairness concerns raised by the retroactive application. This action has created uncertainty in the REAP program, discouraging future plaintiffs and undermining the program's goals of promoting renewable energy in rural areas.

74.     The retroactive application of these new criteria forms a central part of the legal challenge against the USDA's administration of the REAP program. Plaintiffs argue that it undermines the integrity of the program and violates principles of administrative law, particularly those related to fair notice, due process, and consistent application of rules and regulations.

### Inconsistent Evaluations

75.     The USDA's evaluation process for REAP grant applications has been marred by significant inconsistencies, raising serious concerns about the fairness and objectivity of the review process. These inconsistencies are evident in several key areas, each of which undermines the integrity of the REAP program and violates administrative law principles.

76.     Firstly, the case of DTI Solutions and Cookeville Auto Salvage exemplifies the issue of similar projects receiving different outcomes. Despite having nearly identical technical specifications and using the same wording in their applications, these projects received markedly different evaluations. This discrepancy demonstrates a lack of standardized evaluation criteria or inconsistent application of existing criteria, which is a clear violation of the principle of equal treatment under administrative law.

77.     The evaluation process appears to apply criteria arbitrarily across different applications. For instance, some projects were failed for using multiple smaller inverters, while others with similar configurations passed without issue. This inconsistency raises questions about

the objectivity and expertise of the reviewers and constitutes arbitrary and capricious decision-making under the Administrative Procedure Act (5 U.S.C. § 706).

78.     The technical merit review process, which involves a pass/fail system for various aspects of the project, has been applied inconsistently. Some projects have failed for reasons that were not applied to similar projects, suggesting a lack of uniform standards. This inconsistency in applying technical merit criteria not only undermines the fairness of the evaluation process but also violates the USDA's own regulations governing the REAP program.

79.     The retroactive application of new technical merit criteria has not been uniform across all applications. A previously approved grant was rescinded based on these new criteria, while others remained unaffected, creating an uneven playing field for plaintiffs. This inconsistent application of new criteria raises serious due process concerns and violates the principle of legitimate expectations in administrative law.

80.     Innovative technologies, such as DC-coupled systems and multiple inverter configurations, have been evaluated differently across applications. Some reviewers flagged these as concerns, while others recognized them as advanced technical solutions. This disparate treatment of similar technologies demonstrates a lack of technical expertise among reviewers and undermines the REAP program's statutory objective of promoting innovative renewable energy solutions in rural areas.

81.     Plaintiffs have received varying levels and quality of feedback on their applications. Some were provided detailed explanations for denials, while others received vague or insufficient information, hampering their ability to address concerns or appeal decisions. This inconsistency in feedback violates principles of transparency and fairness in administrative decision-making.

82.     Lastly, there appear to be geographical inconsistencies in how applications are evaluated across different USDA offices or regions. Projects with similar characteristics have received different evaluations depending on their location, suggesting a lack of standardized review processes across the agency. This geographical inconsistency violates the principle of equal treatment under federal law.

83.     These inconsistencies in the evaluation process violates the Administrative Procedure Act's prohibition on arbitrary and capricious agency decision-making (5 U.S.C. § 706). They also raise serious concerns about the fairness and transparency of the REAP program, undermining its statutory objectives to promote renewable energy in rural areas. The USDA's failure to maintain consistent evaluation standards across applications not only jeopardizes the integrity of the REAP program but also exposes the agency to potential legal challenges based on violations of administrative law principles and its own statutory mandate.

### Misunderstanding of Technical Innovations

84.     The USDA's evaluation process has demonstrated a concerning lack of understanding or appreciation for innovative technical approaches in solar and battery storage integration. This misunderstanding is evident in several key areas, each of which raises significant concerns about the agency's ability to fulfill its statutory obligations and properly evaluate REAP grant applications.

85.     Firstly, the USDA evaluators have flagged DC-coupled systems as "uncommon" or problematic, despite these systems representing a superior technical choice. DC-coupling increases overall system efficiency by eliminating unnecessary DC-AC-DC conversions between solar panels and batteries. The feasibility study for the Futrell Farms LLC project explicitly stated the benefits of this approach, yet it was not properly recognized in the evaluation. This failure to

understand and appreciate innovative technology directly contradicts the USDA's mandate to support advanced renewable energy systems in rural areas.

86.     Secondly, the use of multiple smaller inverters, a design choice that enhances system reliability and resilience, was questioned by USDA evaluators. This approach offers advantages such as redundancy, flexibility, and optimized performance, particularly crucial for energy security in rural areas. However, the evaluators seemed to lack understanding of these benefits, instead viewing it as a potential flaw. This misunderstanding could lead to the rejection of superior system designs, ultimately disadvantaging rural communities.

87.     The evaluators also appeared to undervalue the importance of energy resilience and grid support features in the proposed systems. These aspects are particularly crucial for rural areas where grid reliability may be a concern, yet they were not adequately recognized in the technical merit reviews. This oversight suggests a fundamental misalignment between the USDA's evaluation criteria and the real-world needs of rural energy systems.

88.     Furthermore, there seems to be a misunderstanding regarding appropriate battery sizing for small-scale, on-site generation projects. The USDA requested justification based on utility-scale metrics (SAIDI and SAIFI data), which may not be applicable or available for these types of projects. This inappropriate application of utility-scale criteria to small-scale projects demonstrates a lack of understanding of the unique characteristics and requirements of distributed energy resources.

89.     The evaluators also inappropriately applied utility-scale project criteria to small-scale, on-site generation systems. This includes references to NREL's established utility-scale soft costs and requirements for Power Purchase Agreements (PPAs) that are not relevant or possible

for smaller projects. This misapplication of criteria not only demonstrates a lack of understanding but also disadvantages small-scale projects that are crucial for rural energy independence.

90.     Additionally, the evaluators seemed to lack understanding of innovative financial structures that make these projects viable, including the stacking of various incentives created by the Inflation Reduction Act. This failure to recognize and properly assess new financial models could result in the rejection of economically viable and beneficial projects.

91.     In some cases, the evaluators misinterpreted or failed to recognize the significance of certain technical specifications. For example, the importance of DC-coupling for battery system efficiency was not properly acknowledged. This misinterpretation of technical details raises concerns about the overall competence of the evaluation process.

92.     Lastly, the evaluations failed to recognize or properly assess the use of cutting-edge technologies that could significantly benefit rural energy systems and grid stability. This lack of recognition for innovation directly contradicts the USDA's mandate to support and encourage the adoption of advanced renewable energy systems in rural areas.

93.     This misunderstanding of technical innovations raises significant concerns about the USDA's fulfillment of its statutory obligations under the Rural Electrification Act and the 2008 Farm Bill. These laws explicitly require the USDA to support and encourage the adoption of renewable energy systems, yet the agency's failure to properly evaluate these innovations suggests a potential breach of its legal mandate to foster rural energy independence and sustainability.

94.     Moreover, this lack of technical understanding exposes the agency to legal challenges under the Administrative Procedure Act, as it demonstrates a stark departure from the agency's statutory responsibilities. The inconsistent application of evaluation criteria and the demonstrable misunderstanding of technical innovations indicate a failure to engage in reasoned

decision-making, a key requirement under administrative law. This failure not only undermines the integrity of the REAP program but also violates the USDA's legal obligations to support and foster innovative renewable energy solutions in rural communities.

### Inappropriate Application of Utility-Scale Criteria

95.     The USDA's application of utility-scale project criteria, with which NREL seems familiar, to small-scale, on-site generation systems represents a flagrant misuse of evaluation standards that directly undermines the purpose and integrity of the REAP program. This misapplication of criteria is not merely an oversight but a fundamental failure to understand the distinct nature and objectives of small-scale renewable energy projects in rural settings.

96.     Specifically, the USDA has egregiously erred in several ways. First, the agency inappropriately referenced NREL's established utility-scale soft costs of 23% as a benchmark for evaluating small-scale projects. This comparison is entirely irrelevant and demonstrates a profound lack of understanding of the cost structures inherent to distributed energy resources. The feasibility study for the Futrell Farms LLC project explicitly stated that their projects do not fit "utility scale" guidelines established by NREL, nor do they align with typical guidelines for battery storage systems. Instead, these projects are specifically designed to support the facility and maximize the power plant's usefulness for grid security, distinguishing them from conventional utility-scale or typical battery storage projects.

97.     Second, the USDA's insistence on Power Purchase Agreements (PPAs) for small-scale projects, particularly within the TVA territory, is not only misguided but demonstrates a clear misunderstanding of the regulatory environment. Projects under 1 MW automatically qualify for the TVA's Dispersed Power Production program, rendering a PPA unnecessary and, in many cases, impossible to obtain prior to project completion.

98.     Third, the USDA failed to recognize the unique characteristics of small-scale projects, which are typically completed in a month and often involve roof-mounted installations requiring specialized safety training and skills. This misunderstanding led to inappropriate comparisons with utility-scale project timelines and cost structures. Additionally, the USDA's evaluation criteria failed to account for the reality that many of these projects take place in communities with limited skilled labor for such installations, necessitating higher labor costs, both to incentivize travel for competent technicians and to train new ones in local communities to provide service once the project is complete, and are not comparable to utility-scale projects.

99.     Furthermore, the USDA requested justification for battery sizing based on SAIDI and SAIFI data, which makes sense, but refused to answer additional questions about which part of the dataset needs to be adhered to. This requirement and refusal to provide clear responses to logical questions demonstrates a failure to understand the primary purposes of these systems, which include energy resiliency and grid support beyond mere outage protection. Lastly, the USDA's evaluation process failed to properly consider the unique financial structures of small-scale projects, including the stacking of various incentives created by the Inflation Reduction Act, which make these projects viable for rural businesses.

100.     This inappropriate application of utility-scale criteria to small-scale projects not only contradicts the purpose and intent of the REAP program but also violates the USDA's statutory mandate under the Rural Electrification Act and the 2008 Farm Bill. These laws explicitly require the USDA to support and encourage the adoption of renewable energy systems in rural areas, yet the agency's misapplication of evaluation criteria actively disadvantages the very rural small businesses and agricultural producers the program is designed to benefit.

101.     Furthermore, this misapplication of criteria raises serious legal concerns under the Administrative Procedure Act. The USDA's failure to properly differentiate between utility-scale and small-scale projects including storage in its evaluation process demonstrates a lack of reasoned decision-making and constitutes arbitrary and capricious agency action. This egregious departure from the agency's statutory responsibilities demands immediate judicial scrutiny and corrective measures to ensure the integrity of the REAP program and to protect the rights of rural plaintiffs seeking to implement innovative renewable energy solutions.

<u>**Rescission of a Previously Approved Grant**</u>

102.     The USDA's rescission of La Finca Natural, LLC's previously approved REAP grant represents a flagrant violation of administrative law principles and a gross abuse of agency discretion. This action not only undermines the integrity of the REAP program but also exposes the agency to significant legal vulnerability. The rescission raises serious concerns on multiple fronts, each of which demands careful consideration and immediate action.

103.     By rescinding a previously approved grant, the USDA has egregiously violated the legitimate expectations of grant recipients who have relied on the agency's initial approvals. This action infringes upon the principle of detrimental reliance, as grant recipients may have made financial commitments or begun project implementation based on these approvals. The rescission of the approved grant, particularly when coupled with the inconsistent application of evaluation criteria, constitutes prima facie evidence of arbitrary and capricious decision-making under the Administrative Procedure Act (5 U.S.C. § 706). This inconsistency is starkly evident in cases where similar projects received disparate treatment, such as the contrasting outcomes for DTI Solutions and Cookeville Auto Salvage projects.

104.     Furthermore, the rescission of the approved grant without adequate notice or opportunity for appeal as a result of the subsequent inaction of the USDA to evaluate the application based on the retroactive production of an alleged "Draft" ruleset, violates the due process rights of grant recipients. This action raises serious questions about the fairness and transparency of the USDA's decision-making process. The rescission also constitutes a violation of the USDA's own regulations governing the REAP program (7 CFR § 4280, Subpart B). Any deviation from established criteria without proper rulemaking procedures could be considered a breach of the agency's own rules.

105.     By rescinding the approved grant, the USDA is actively undermining the statutory objectives of the REAP program as outlined in the Rural Electrification Act and the 2008 Farm Bill. This action directly contradicts the agency's mandate to promote and support innovative renewable energy solutions in rural communities. The economic impact of these rescissions poses a significant and imminent risk of material damage to grant recipients, particularly in light of the impending tax threshold deadline of September 30th. This action deprives plaintiffs of substantial tax benefits and jeopardizes the economic viability of their renewable energy projects.

106.     The USDA's willingness to rescind the approved grant creates an atmosphere of uncertainty and instability within the REAP program. This undermines confidence in the program and may discourage future plaintiffs, thereby hindering the broader implementation of federal clean energy policies in rural areas. Moreover, the USDA has failed to provide clear and comprehensive explanations for the rescission of the approved grant, further exacerbating concerns about the fairness and objectivity of its decision-making process.

107.     The rescission of a previously approved grant demands immediate and decisive legal action. This conduct represents a clear breach of the USDA's statutory duties and a failure to

engage in reasoned decision-making. The agency's actions not only jeopardize the viability of crucial renewable energy projects in rural areas but also undermine the very foundations of administrative law and due process.

**Urgency and Potential Irreparable Harm**

108.    The nature of the REAP grant applications and the associated tax incentives creates an urgent situation that, if not addressed promptly, could result in irreparable harm to the plaintiffs and the rural communities they serve.

109.    The USDA's actions and inactions regarding the evaluation and approval of REAP grant applications have placed the plaintiffs in a precarious position with respect to the 2023-2024 fiscal year. The delay in processing and approving these applications threatens to push the projects into the next fiscal year, causing the plaintiffs to lose critical tax incentives that are essential to the financial viability of these renewable energy projects.

110.    The potential loss of these tax incentives would have severe and far-reaching consequences, including loss of the tax incentives created by the Inflation Reduction Act which are crucial components of the financial structure that makes these renewable energy projects economically viable for rural businesses and agricultural producers. The loss of these incentives could render many projects financially unfeasible, leading to their cancellation.

111.    Furthermore, the REAP program is designed to promote renewable energy adoption and economic development in rural areas. The failure to approve these grants in a timely manner jeopardizes significant investments in rural communities, depriving them of job creation opportunities and economic growth.

112.    Furthermore, the proposed projects, including innovative solar and battery storage systems, are designed to enhance energy resilience and grid stability in rural communities. Delays

or cancellations due to loss of tax incentives would leave these communities vulnerable to energy insecurity.

113.    Furthermore, Ovanova and other plaintiffs have invested substantial resources in developing these projects. The uncertainty created by the USDA's actions has already caused significant operational disruptions and costs.

114.    Furthermore, the reputational damage resulting from project cancellations or delays could severely impact the plaintiffs' ability to secure future partnerships and business opportunities, with potential losses estimated in the hundreds of millions of dollars.

115.    The delay in approving these projects undermines federal clean energy initiatives and the statutory objectives of the REAP program to promote renewable energy adoption in rural areas.

116.    The time-sensitive nature of these tax incentives, coupled with the USDA's inconsistent and delayed evaluation process, creates a situation where the plaintiffs face imminent and irreparable harm. The loss of these incentives cannot be adequately remedied by monetary damages alone, as they would fundamentally alter the economic landscape for renewable energy development in rural areas and set back clean energy initiatives for years to come.

117.    The urgency of this situation is further compounded by the approaching end of the fiscal year, which threatens to exacerbate the harm to the plaintiffs and the rural communities they aim to serve. Prompt action is necessary to prevent this irreparable harm and to ensure the continued viability of these critical renewable energy projects in rural America.

**Damages**

118.    As a result of Defendant's actions, Plaintiff has suffered substantial damages, including but not limited to as a direct and proximate result of Defendant's unlawful actions and omissions as described herein, Plaintiff has suffered and continues to suffer substantial damages.

119.    Plaintiff has incurred direct financial losses, including but not limited to a loss of potential funding sources amounting to approximately $100 million due to inability to submit or forced withdrawal of grant applications, and lost profits of approximately $10 million due to less favorable volume discounts with distributors.

120.    Plaintiff has suffered operational costs and disruptions, including significant operational costs totaling approximately $2 million, which includes the entire team's salary for two quarters.

121.    Plaintiff has experienced substantial loss of business opportunities and relationships, including irreparable loss of partnerships for pilot projects with rural cooperatives, damage to relationships, such as with EG4, causing an estimated loss of $500 million in potential business, and lost potential financing opportunities due to misunderstandings about available incentives.

122.    Plaintiff has suffered severe reputational damage, including destruction of reputation due to presentation of failure letters, resulting in an estimated $2 billion in losses over nine years of 100% customer satisfaction being compromised.

123.    Plaintiff and its clients have incurred losses related to tax benefits, including the potential losses in the tens of millions of dollars due to uncertainties around grant tax credits and changing tax credit maps, and farmers losing out on bonus depreciation, estimated at up to $3.1 million.

124.    Plaintiff has experienced business interference, including suppressed submission volumes due to specific actions, such as the rescinded grant approval for La Finca, two-month delay awaiting clear guidance following initial failures, and lack of clear direction on how battery components will be graded.

125.    Plaintiff has suffered economic damages, including lost wages and benefits, and future lost earning capacity.

126.    Plaintiff seeks punitive damages, to the extent permitted by law, based on Defendant's willful and wanton conduct.

127.    Plaintiff seeks such other and further relief as the Court deems just and proper.

128.    Plaintiff seeks compensation for these damages in an amount to be proven at trial, but no less than $2,615,100,000, which represents a conservative estimate of the quantifiable damages outlined above.

**FIRST CLAIM FOR RELIEF**
**Violation of the Administrative Procedure Act**

**Arbitrary and Capricious Agency Action**

129.    Plaintiffs repeat, reallege, and incorporated the allegations in the paragraphs above as if fully set forth herein.

130.    The USDA's actions in evaluating REAP grant applications and rescinding a previously approved grant constitute arbitrary and capricious agency action in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

131.    The USDA has applied evaluation criteria inconsistently across similar projects. For example, the DTI Solutions and Cookeville Auto Salvage projects, despite having nearly identical technical specifications and application wording, received markedly different evaluations.

132.    This inconsistency demonstrates a lack of rational decision-making and violates the APA's requirement for reasoned agency action.

133.    The USDA has failed to properly assess innovative technical approaches in solar and battery storage integration. For instance, the agency flagged DC-coupled systems and multiple inverter configurations as problematic, despite these being superior technical choices that increase system efficiency and reliability.

134.    This failure to properly evaluate technical merit demonstrates a lack of rational basis for the agency's decisions.

135.    The USDA has also misapplied utility-scale project criteria to small-scale, on-site generation systems. This includes referencing NREL's established utility-scale soft costs and requiring Power Purchase Agreements (PPAs) that are not relevant or possible for smaller projects.

136.    This misapplication of criteria is arbitrary and fails to consider important aspects of the problem, violating the APA's standards for reasoned decision-making.

137.    The USDA's rescission of a previously approved grant without adequate justification or consistent application of criteria constitutes arbitrary and capricious action.

138.    This reversal of decisions without a reasoned explanation violates the APA's requirement for consistent agency action.

**<u>Failure to Provide Adequate Notice and Comment</u>**

139.    The USDA's implementation of new technical merit criteria without proper notice or opportunity for public comment violates the APA's rulemaking requirements under 5 U.S.C. § 553.

140.    The USDA applied new technical merit criteria to existing REAP grant applications without providing notice to plaintiffs or following proper rulemaking procedures. This retroactive application of rules without notice violates the APA's requirements for agency rulemaking.

141.    The USDA failed to provide an opportunity for public comment on the new technical merit criteria, depriving stakeholders of their right to participate in the rulemaking process as required by the APA.

142.    The USDA did not publish the new technical merit criteria in the Federal Register, as required for substantive rule changes under the APA.

**Violation of Statutory Mandate**

143.    The USDA's actions violate its statutory mandate under the Rural Electrification Act, as amended by the 2008 Farm Bill, to promote and support renewable energy systems in rural areas.

144.    By misunderstanding and improperly evaluating innovative technical approaches, the USDA has failed to fulfill its statutory obligation to support and encourage the adoption of renewable energy systems in rural areas.

145.    The USDA's actions, particularly the rescission of a previously approved grant and the application of inappropriate evaluation criteria, directly contradict the REAP program's objectives of increasing American energy independence and improving energy efficiency in rural areas.

146.    The USDA's misapplication of utility-scale criteria to small-scale projects disadvantages the very rural small businesses and agricultural producers that the REAP program is designed to benefit, violating the agency's statutory mandate.

**SECOND CLAIM FOR RELIEF**
**Declaratory Judgment**

147. Plaintiffs repeat, reallege, and incorporated the allegations in the paragraphs above as if fully set forth herein.

**Request for Declaration of Rights and Legal Relations**

148. Plaintiffs seek a declaratory judgment under 28 U.S.C. §§ 2201-2202 to clarify the rights and legal relations between Ovanova, other REAP grant plaintiffs, and the USDA regarding the administration of the REAP program.

149. Specifically, Plaintiffs request the Court to declare: the USDA's retroactive application of new technical merit criteria to existing REAP grant applications is unlawful and violates the Administrative Procedure Act, the USDA's inconsistent evaluation of similar projects constitutes arbitrary and capricious agency action in violation of the APA, the USDA's misunderstanding and improper evaluation of innovative technical approaches, such as DC-coupled systems and multiple inverter configurations, violates its statutory mandate under the Rural Electrification Act and the 2008 Farm Bill, the USDA's inappropriate application of utility-scale criteria to small-scale, on-site generation projects is unlawful and contradicts the purpose and intent of the REAP program.

150. The rescission of a previously approved grant without adequate justification or consistent application of criteria is unlawful and violates principles of administrative law and due process.

**Clarification of REAP Program Evaluation Criteria**

151. Plaintiffs seek a declaratory judgment to clarify the proper evaluation criteria for REAP grant applications, including:

a. A declaration that the USDA must evaluate REAP grant applications based on the criteria in place at the time of submission, absent proper notice and comment rulemaking for any changes.

b. A clear delineation of the appropriate evaluation criteria for small-scale, on-site generation projects, distinct from utility-scale projects.

c. A declaration that innovative technical approaches, such as DC-coupled systems and multiple inverter configurations, must be evaluated based on their technical merits and potential benefits to rural energy resilience and grid stability.

d. Clarification on the proper application of financial criteria, including the consideration of innovative financial structures that leverage various incentives created by the Inflation Reduction Act.

e. A declaration that the USDA must provide clear, objective, and consistent evaluation criteria that align with the REAP program's goals of promoting renewable energy in rural areas.

f. Clarification on the proper consideration of local factors, such as labor constraints and infrastructure limitations, in evaluating project costs and feasibility.

g. A declaration that the USDA must provide detailed and consistent feedback on grant applications, including specific reasons for denials or rescissions, to ensure transparency and fairness in the evaluation process.

152. This declaratory judgment is necessary to resolve the uncertainty and controversy surrounding the USDA's administration of the REAP program and to ensure that future grant applications are evaluated fairly, consistently, and in accordance with the program's statutory objectives.

### THIRD CLAIM FOR RELIEF
### Mandamus

153.    Plaintiffs repeat, reallege, and incorporated the allegations in the paragraphs above as if fully set forth herein.

### USDA's Failure to Properly Perform Statutory Duties

154.    The USDA has egregiously failed to perform its statutory duties under the Rural Electrification Act, as amended by the 2008 Farm Bill, and the regulations governing the Rural Energy for America Program (REAP).

155.    The USDA has blatantly disregarded its obligation to support and encourage the adoption of renewable energy systems in rural areas. By misunderstanding and improperly evaluating innovative technical approaches, such as DC-coupled systems and multiple inverter configurations, the agency has actively hindered the implementation of advanced renewable energy solutions.

156.    The USDA's inconsistent and capricious application of evaluation criteria directly contradicts its statutory duty to administer the REAP program fairly and effectively. The stark discrepancies in evaluations for similar projects, such as DTI Solutions and Cookeville Auto Salvage, demonstrate a flagrant violation of the agency's responsibility to ensure equitable access to REAP grants.

157.    By inappropriately applying utility-scale criteria to small-scale, on-site generation projects containing battery storage, the USDA has fundamentally undermined the REAP program's objectives. This misapplication directly contravenes the agency's duty to promote renewable energy solutions tailored to the needs of rural small businesses and agricultural producers.

158.    The USDA's retroactive application of new technical merit criteria without proper notice or adherence to rulemaking procedures constitutes a clear breach of its statutory obligation to administer the REAP program in accordance with established administrative law principles.

159.    By rescinding a previously approved grant and creating an atmosphere of uncertainty within the REAP program, the USDA has failed in its statutory duty to increase American energy independence and improve energy efficiency in rural areas.

## Request to Compel Proper Evaluation of REAP Grant Applications

160.    Given the USDA's egregious failure to fulfill its statutory obligations, we seek a writ of mandamus to compel the agency to properly evaluate REAP grant applications in accordance with its legal duties. Specifically, we request the Court to order the USDA to:

    a.  Immediately re-evaluate all Ovanova applications based on their technical merits and alignment with REAP program goals, using clear, objective criteria that are consistent with the program's rules and guidelines as they existed at the time of application submission, graded against other applications in the quarter submitted with the amount of program funding available.

    b.  Establish and implement a standardized evaluation process that properly recognizes and assesses innovative technical approaches in solar and battery storage integration, including DC-coupled systems and multiple inverter configurations.

    c.  Develop and apply appropriate evaluation criteria for small-scale, on-site generation projects that accurately reflect the unique characteristics and objectives of these systems, distinct from utility-scale projects.

    d.   Provide detailed, consistent, and transparent feedback on all grant applications, including specific reasons for denials or rescissions, to ensure fairness and accountability in the evaluation process.

    e.   Reinstate the previously approved grant that was rescinded based on retroactively applied criteria.

    f.   Implement safeguards to prevent the arbitrary reversal of the La Finca, LLC grant approval and ensure consistency in the application of evaluation criteria across all REAP grant applications.

    g.   Consider the potential impact of the current evaluation process on rural energy security and grid stability, as mandated by the agency's statutory obligations.

    h.   Establish a clear and fair appeals process for affected grant plaintiffs, allowing for the timely resolution of disputes arising from the evaluation process.

161.    This mandamus action is necessary to compel the USDA to fulfill its clear statutory duty to administer the REAP program in a manner that promotes renewable energy adoption in rural areas, ensures fair and consistent evaluation of grant applications, and upholds the principles of administrative law and due process.

### FOURTH CLAIM FOR ADDITIONAL RELIEF

162.    Plaintiffs repeat, reallege, and incorporated the allegations in the paragraphs above as if fully set forth herein.

163.    In light of the imminent fiscal year-end and the potential for significant business losses, the plaintiffs respectfully request the following additional relief.

### <u>Temporary Restraining Order and Preliminary Injunction</u>

164.    The plaintiffs seek an immediate temporary restraining order and preliminary injunction to:

165.    Prevent the USDA from applying the new technical merit criteria retroactively to pending REAP grant applications.

166.    Enjoin the USDA from rescinding the previously approved grant based on the retroactively applied criteria.

167.    Prohibit the USDA from denying applications based on inconsistent or arbitrary evaluations, particularly those related to innovative technical approaches such as DC-coupled systems and multiple inverter configurations.

### Expedited Review

168.    Given the time-sensitive nature of this matter, particularly the impending September 30th tax threshold deadline, Plaintiffs request expedited review of this case under Federal Rule of Civil Procedure 65.

### Emergency Writ of Mandamus

169.    Plaintiffs seek an emergency writ of mandamus compelling the USDA to immediately re-evaluate all Ovanova applications using the criteria in place at the time of submission, to be completed before the fiscal year-end, and to process and approve qualifying REAP applications within a specified timeframe to mitigate ongoing business losses.

### Equitable Tolling and Deadline Extensions

170.    Plaintiffs request that the Court apply equitable tolling to extend any deadlines related to the REAP program or associated tax benefits that may be jeopardized by the USDA's actions, particularly the September 30th tax threshold deadline, and to issue a declaratory judgment

that the USDA must extend application and implementation deadlines to account for the delays caused by their improper evaluation process.

## **Compensatory Damages**

171.   While recognizing the limitations on seeking damages against federal agencies, Plaintiffs request compensatory damages under theories of detrimental reliance and promissory estoppel for specific financial losses incurred due to the USDA's actions.

## **Permanent Injunction**

172.   As part of the final relief, Plaintiffs seek a permanent injunction requiring the USDA to implement clear, consistent, and transparent evaluation criteria for REAP applications that properly recognize and assess innovative technical approaches in solar and battery storage integration, to provide adequate training to reviewers on innovative renewable energy technologies, including DC-coupled solar + storage microgrid systems and multiple inverter configurations, to establish an independent review process for disputed evaluations to ensure fair and consistent application of criteria across all REAP grant applications, and to develop and apply appropriate evaluation criteria for small-scale, on-site generation projects that accurately reflect the unique characteristics and objectives of these systems, distinct from utility-scale projects.

173.   These additional forms of relief are necessary to address both the immediate concerns of potential business losses and the broader issues of fairness and consistency in the REAP application process, ensuring that the USDA fulfills its statutory mandate to support and encourage the adoption of innovative renewable energy systems in rural areas.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully pray this Court to:

Declaratory Relief

a.  Declare USDA's retroactive application of new technical merit criteria to existing REAP grant applications is unlawful and violates the Administrative Procedure Act;

b.  Declare USDA's inconsistent evaluation of similar projects constitutes arbitrary and capricious agency action in violation of the Administrative Procedure Act;

c.  Declare USDA's misunderstanding and improper evaluation of innovative technical approaches violates its statutory mandate under the Rural Electrification Act and the 2008 Farm Bill;

d.  Declare USDA's inappropriate application of utility-scale criteria to small-scale, on-site generation projects is unlawful and contradicts the purpose and intent of the REAP program; amd

e.  Declare the rescission of previously approved grants without adequate justification or consistent application of criteria is unlawful and violates principles of administrative law and due process.

<u>Injunctive Relief</u>

f.  Issue a temporary restraining order and preliminary injunction:

   i.   Preventing the USDA from applying new technical merit criteria retroactively to pending REAP grant applications;

   ii.  Enjoining the USDA from rescinding previously approved grants based on retroactively applied criteria; and

   iii. Prohibiting the USDA from denying applications based on inconsistent or arbitrary evaluations, particularly those related to innovative technical approaches such as DC-coupled systems and multiple inverter configurations.

g.  Issue a permanent injunction requiring the USDA to:

i.     Implement clear, consistent, and transparent evaluation criteria for REAP applications that properly recognize and assess innovative technical approaches in solar and battery storage integration;

ii.    Provide adequate training to reviewers on innovative renewable energy technologies, including DC-coupled solar + storage microgrid systems and multiple inverter configurations;

iii.   Establish an independent review process for disputed evaluations to ensure fair and consistent application of criteria across all REAP grant applications; and

iv.    Develop and apply appropriate evaluation criteria for small-scale, on-site generation projects that accurately reflect the unique characteristics and objectives of these systems, distinct from utility-scale projects.

<u>Administrative Relief</u>

h.  Set aside and vacate:

    i.     All USDA decisions based on retroactively applied criteria;

    ii.    All inconsistent evaluations of similar projects;

    iii.   All decisions that improperly evaluated innovative technical approaches;

    iv.    All decisions that inappropriately applied utility-scale criteria to small-scale projects; and

    v.     All rescissions of previously approved grants based on inconsistent application of criteria or inadequate justification.

i.  Order the USDA to:

    i.     Re-evaluate all Ovanova applications using the criteria in place at the time of submission, to be completed before the fiscal year-end;

    ii.    Process and approve qualifying REAP applications within a specified timeframe to mitigate ongoing business losses;

    iii.    Establish and implement a standardized evaluation process that properly recognizes and assesses innovative technical approaches in solar and battery storage integration;

    iv.    Develop and apply appropriate evaluation criteria for small-scale, on-site generation projects;

    v.    Provide detailed, consistent, and transparent feedback on all grant applications, including specific reasons for denials or rescissions;

    vi.    Reinstate previously approved grants that were rescinded based on retroactively applied criteria;

    vii.    Implement safeguards to prevent arbitrary reversal of grant approvals; and

    viii.    Establish a clear and fair appeals process for affected grant plaintiffs.

<u>Monetary Relief</u>

j.    Award compensatory damages to Plaintiffs in an amount to be determined at trial, but no less than $2,615,100,000, for economic and non-economic losses resulting from the USDA's actions, including:

    i.    Direct financial losses;

    ii.    Operational costs and disruptions;

    iii.    Loss of business opportunities and partnerships;

    iv.    Reputational damage;

    v.    Lost profits and future lost earning capacity; and

    vi.    Loss of tax benefits.

k.  Award punitive damages, if applicable and permitted by law, based on Defendants' willful and wanton conduct.

Equitable Relief

l.  Apply equitable tolling to extend any deadlines related to the REAP program or associated tax benefits that may be jeopardized by the USDA's actions, particularly the September 30th tax threshold deadline;

m.  Issue a declaratory judgment that the USDA must extend application and implementation deadlines to account for the delays caused by their improper evaluation process.

Procedural Relief

n.  Grant expedited review of this case under Federal Rules of Civil Procedure 65, given the time-sensitive nature of the matter, particularly the impending September 30th tax threshold deadline.

Costs and Fees

o.  Award Plaintiff all costs and expenses incurred in this action, including reasonable attorney's fees, as authorized under the Equal Access to Justice Act, 28 U.S.C. § 2412.

Further Relief

p.  Grant such other and further relief as the Court deems just and proper to ensure the fair and lawful administration of the REAP program and to protect the rights of Plaintiffs and other similarly situated plaintiffs.

## DEMAND FOR JURY TRIAL

A.  Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable in this action.

B.  This demand for a jury trial is appropriate given the complex factual disputes and the significant legal issues at stake in this case, including:

    a.  The determination of whether the USDA's actions in evaluating REAP grant applications were arbitrary and capricious.

    b.  The assessment of whether the USDA properly understood and evaluated innovative technical approaches in solar and battery storage integration.

    c.  The evaluation of whether the USDA appropriately applied evaluation criteria to small-scale, on-site generation projects.

    d.  The determination of whether the USDA's rescission of a previously approved grant was lawful and justified.

    e.  The assessment of damages, if any, resulting from the USDA's alleged improper actions in administering the REAP program.

Dated:        September 27, 2024

                Respectfully submitted,

                 /s/ Alex Menendez
                Alex Menendez (D.C. Bar No. 470475)
                Gregory Sussman (D.C. Bar No. 1029911)
                **WATKINSON MILLER PLLC**
                1100 New Jersey Ave. SE, Suite 910
                Washington, D.C. 20003
                Tel: 202.842.2345
                amenendez@watkinsonmiller.com
                gsussman@watkinsonmiller.com

                James A. Wolff (*pro hac vice forthcoming*)
                **WARSHAW BURSTEIN, LLP**
                575 Lexington Avenue, 7th Floor
                New York, NY 10022
                Tel: 212.984.7795
                JWolff@wbny.com

                *Counsel for Plaintiffs*