UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OVANOVA, INC., *et al.*,<br><br>    Plaintiffs,<br><br>       v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>    Defendants. | Civil Action No. 24-2769 (JEB) |

### MEMORANDUM OPINION

Plaintiffs Ovanova, Inc. and its associated entities help rural businesses and agricultural producers submit grant applications to the Rural Energy for America Program (REAP) run by the U.S. Department of Agriculture. Unhappy with a spate of denials, they brought this suit against USDA and its officials, the National Renewable Energy Laboratory (which assists USDA), its Director Martin Keller, and others, claiming that the manner in which USDA administers REAP violates the Administrative Procedure Act. Defendants NREL and Keller now move to dismiss the claims alleged against them, contending that they are not proper parties in an APA case. Agreeing, the Court will grant the Motion.

**I.    Background**

REAP is designed to "increase American energy independence by promoting the use of renewable energy resources and improving the energy efficiency of small businesses and agricultural producers in rural areas." ECF No. 1 (Compl.), ¶ 54. It does so by providing significant grants for projects that create renewable-energy systems or improve energy efficiency. Id. To apply for a REAP grant, applicants must submit detailed proposals that

1

include the environmental impacts, technical specifications, and financial projections for their project. Id., ¶ 55. USDA must follow regulatory guidelines in its assessment of REAP applications, and it collaborates with NREL to evaluate their technical components. Id., ¶¶ 55–56.

The Court takes judicial notice that NREL is a federally funded research and development center (FFRDC), created via a contractual agreement between the Department of Energy and the Alliance for Sustainable Energy, LLC. See What Are Federally Funded Research and Development Centers?, NREL (July 2020), https://perma.cc/QF4B-FVNT. As a FFRDC, NREL must operate in the public interest, refrain from competing with the private sector, and disclose its affairs to DOE. See 48 C.F.R. §§ 35.017(a), 35.017-1(c)(4), 35.017-2(h). Other agencies may use NREL for work "within the purpose . . . of the FFRDC." Id. § 35.017-3(a). USDA collaborates with NREL to "conduct[] technical reviews of REAP grant applications." Compl., ¶ 31.

Plaintiffs are renewable-energy developers who provide energy solutions to rural businesses and agricultural producers through building projects and helping clients secure funding for such projects. See id., ¶¶ 1, 57. Specifically, they focus on "solar and battery storage projects designed to enhance energy resilience and grid stability in rural communities." Id., ¶¶ 5, 58. To date, Plaintiffs have helped their clients submit applications requesting over $100 million from REAP, making them, in their own words, "leading developer[s] in the program." Id., ¶¶ 2, 57. Their clients' success in the application process seems to be waning, however, as USDA has recently denied many of their applications. Id., ¶ 60. The denials, Plaintiffs allege, have hindered their ability to complete energy projects that would have benefited rural communities and their company. Id., ¶¶ 63, 68; ECF No. 19 (Opp.) at 6–7.

2

The Ovanova entities brought this suit in September, claiming that USDA, in its review of over 60 applications that they had helped clients submit, had violated the APA by using arbitrary and capricious standards, implementing new technical-merit criteria without proper notice or opportunity for public comment, and failing to fulfill its statutory obligation to support the adoption of renewable-energy systems in rural areas. See Compl., ¶¶ 6, 60, 62, 129–46. They alleged that USDA's technical review of the applications largely rubber-stamps NREL's recommendation from its own review process, which Plaintiffs believe relies on unannounced, unauthorized standards. Id., ¶¶ 64–65. Plaintiffs seek declaratory, injunctive, administrative, monetary, equitable, and procedural relief. Id. at 39–43. NREL and Keller now move for dismissal on the basis that they are improper parties in an APA suit.

**II.     Legal Standard**

The parties dispute whether this Motion should be evaluated under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction or 12(b)(6) for failure to state a claim upon which relief can be granted. See Opp. at 2–3; ECF No. 22 (Reply) at 2–3. This determination largely hinges on whether NREL's federal funding renders it a part of the Government; if so, it could raise a jurisdictional defense of sovereign immunity. See FDIC v. Meyer, 510 U.S. 471, 475 (1994). This is true if NREL is not an agency subject to the APA, but it is still part of the Government. See Flaherty v. Ross, 373 F. Supp. 3d 97 (D.D.C. 2019) (no subject-matter jurisdiction over claims against New England Fishery Management Council, which was part of Government but not an agency); Elec. Priv. Info. Ctr. v. Nat'l Sec. Comm'n on A.I., 466 F. Supp. 3d 100 (D.D.C. 2020) (same for claims against National Security Commission on A.I.). On the other hand, if NREL is not part of the Government at all, then it cannot raise a sovereign-immunity defense and can instead only argue that Plaintiffs have failed

3

to state a claim. Although NREL does not attempt to raise a sovereign-immunity defense and instead believes Rule 12(b)(1) applies for other reasons, the Court has an independent obligation to assess whether the jurisdictional bar has been cleared. See Abou-Hussein v. Mabus, 953 F. Supp. 2d 251, 263 n.6 (D.D.C. 2013). For reasons stated below, the Court will ultimately assess this Motion under Rule 12(b)(6).

That Rule provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The court need not accept as true, then, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. See Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted). For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III.   Analysis**

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review." 5 U.S.C. § 702. A plaintiff may file suit "against the United States, the agency by its official title, or the appropriate officer." Id., § 703. A fundamental prerequisite to APA review is that the judicial challenge be to agency — and necessarily government — action.

4

The Court ultimately concludes that NREL is like Amtrak, which is a quasi-public company that receives federal funding but is not part of the Government. See Totten v. Bombardier Corp., 380 F.3d 488, 491–92 (D.C. Cir. 2004). In Totten, the Circuit cited Amtrak's founding statute, which plainly states that the company "is not a department, agency, or instrumentality of the United States Government." Id. (citing 49 U.S.C. § 24301(a)(3)). The regulation establishing FFRDCs is less explicit on this point but nevertheless assumes that they are different entities from the Government. It states, for instance, that "FFRDC[s] [are] required to conduct [their] business in a manner befitting [their] special relationship with the Government," and "[l]ong-term relationships between the Government and FFRDC[s] are encouraged in order to provide the continuity that will attract high-quality personnel to the FFRDC[s]." 48 C.F.R. § 35.017(a).

Even if that were not the case, NREL is plainly not an agency for purposes of the APA. "The statutory definition of 'agency' is not entirely clear, but the APA . . . confers agency status on any administrative unit with substantial independent authority in the exercise of specific functions." Soucie v. David, 448 F.2d 1067, 1073 (D.C. Cir. 1971). There are two factors that typically determine whether an entity wields such authority: "investigative power and authority to make final and binding decisions." Elec. Priv. Info. Ctr., 466 F. Supp. 3d at 109.

The Ovanova entities allege that NREL acts as an agency because USDA follows its recommendations, thus giving NREL full authority over whether applications that relate to batteries are granted. See Compl., ¶ 65. Regardless of investigatory power, which the parties do not discuss, NREL disavows that classification because it does not make final, binding decisions. See ECF No. 15 (Mot.) at 8–10. Instead, Defendant contends, it is an advisory body similar to the initial review groups (IRGs) that were established by the former Department of Health,

5

Education, and Welfare to assist with the National Advisory Mental Health Council's evaluation of grant applications. Id. The Court agrees.

Our Circuit found that the IRGs were not agencies in Washington Research Project, Inc. v. Department of Health, Education & Welfare, 504 F.2d 238 (D.C. Cir. 1974). It explained that the IRGs were groups composed of nongovernmental consultants who evaluated grant applications received by NAMHC, at times conducting site visits, and eventually submitted detailed reports to NAMHC that recommended whether to grant the applications and the priority that they should receive. Id. at 242. While the IRGs' recommendations were "very influential in [NAMHC's] funding decision[s]," the Circuit found that they were "advisory committees" rather than agencies because they could only provide recommendations for the grants' outcomes, not actually approve the grants. Id. at 243, 246–48; see also Flaherty, 373 F. Supp. 3d at 108–109 (holding that while Fishery Management Council prepares management plans and conducts research for Secretary of Commerce, all its actions must be approved by Secretary, so it is not an agency). The Circuit explained that "[t]he fact that the NAMHC may be greatly influenced by the IRG[s'] expert view does not make the IRG[s] . . . agenc[ies]." Wash. Rsch. Project, 504 F. 2d at 248. Because NREL, like the IRGs in Washington Research Project, lacks the formal authority to make final decisions, the caselaw suggests that it is not an agency.

Seeking to recharge their argument, the Ovanova entities contend that NREL differs from the IRGs because the latter were not under formal contract, whereas NREL has an "ongoing, formalized role in REAP administration." Opp. at 5. Plaintiffs further assert that NREL's involvement in streamlining the REAP application process "demonstrates a level of authority and influence that exceeds" that of the IRGs. Id. In support of those propositions, they cite only Burka v. U.S. Department of Health & Human Services, 87 F.3d 508 (D.C. Cir. 1996), which

6

held that because the Department of Health and Human Services could fully access and use data tapes held by a private contractor, those tapes were agency records. See Opp. at 5. Yet that case concerned the Freedom of Information Act and never addressed whether the private contractor was itself an agency for APA purposes. See Burka, 87 F.3d at 515 (examining whether records were created by agency employees or held on agency property). Indeed, "[t]he APA and FOIA define 'agency' differently." Elec. Priv. Info. Ctr., 466 F. Supp. 3d at 107. Burka therefore has no bearing on whether NREL's entanglement with USDA and the REAP process imparts agency status.

NREL's formalized role and participation in streamlining the application process, moreover, does not bestow power upon it to make final decisions. Rather while NREL provides an influential technical review of projects, the final grant decisions are ultimately made by USDA. It thus occupies a similar role to the IRGs and cannot be defined as an agency. It follows that an APA suit against NREL cannot proceed. Keller, similarly, is not an agency employee who can be sued under the statute. See 5 U.S.C. § 703.

**IV. Conclusion**

For the aforementioned reasons, the Court will grant Defendants NREL and Keller's Motion to Dismiss without prejudice. A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: January 13, 2025