UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OVANOVA, INC., *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE, *et al.*,

Defendants.

Civil Action No. 24-2769 (JEB)

**MEMORANDUM OPINION**

Plaintiffs Ovanova, Inc. and its associated entities help rural businesses and agricultural producers submit grant applications to the Rural Energy for America Program (REAP) run by the U.S. Department of Agriculture. Unhappy with a spate of denials, they brought this suit against USDA and its officials, the National Renewable Energy Laboratory (NREL), its Director Martin Keller, and others, claiming that the manner in which USDA administers REAP violates the Administrative Procedure Act. The Court recently dismissed NREL and Keller. See ECF No. 32 (Order). Hoping to follow in their wake, USDA and its officials now similarly move to dismiss the suit against them, contending that Plaintiffs lack Article III and prudential standing and that their claims fail on the merits in any case. Agreeing, the Court will grant the Motion.

I.  **Background**

REAP is designed to "increase American energy independence by promoting the use of renewable energy resources and improving the energy efficiency of small businesses and agricultural producers in rural areas." ECF No. 1 (Compl.), ¶ 54. It does so by providing

1

significant grants for projects that create renewable-energy systems or improve energy efficiency. Id. To apply for a REAP grant, applicants must submit detailed proposals that include the environmental impacts, technical specifications, and financial projections for their project. Id., ¶ 55. USDA must follow regulatory guidelines in its assessment of REAP applications, and it collaborates with NREL to evaluate their technical components. Id., ¶¶ 55–56.

Plaintiffs are renewable-energy developers who provide energy solutions to rural businesses and agricultural producers by building projects and helping clients secure funding for such projects. Id., ¶¶ 1, 57. To date, Plaintiffs have helped their clients submit applications requesting over $100 million from REAP. Id., ¶¶ 2, 57. Their clients' success in the application process seems to be waning, however, as USDA has recently denied many of their applications. Id., ¶ 60. The denials, Plaintiffs allege, have hindered their ability to complete energy projects that would have benefited rural communities and their company. Id., ¶¶ 63, 68.

The Ovanova entities brought this suit last September, claiming that USDA, in its review of over 60 applications that they had helped clients submit, had violated the APA by using arbitrary and capricious standards, implementing new technical-merit criteria without proper notice or opportunity for public comment, and failing to fulfill its statutory obligation to support the adoption of renewable-energy systems in rural areas. See Compl., ¶¶ 6, 60, 62, 129–46. They alleged that USDA's technical review of the applications largely rubber-stamps NREL's recommendation from its own review process, which Plaintiffs believe relies on unannounced, unauthorized standards. Id., ¶¶ 64–65. Plaintiffs seek declaratory, injunctive, administrative, monetary, equitable, and procedural relief. Id. at 39–43. The remaining Defendants now move to dismiss. See ECF No. 27 (Mot.).

**II.      Legal Standard**

When a defendant files a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff generally "bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 172–73 (D.D.C. 2020)); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).  The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  While a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

**III.     Analysis**

The Court begins, as it must, with the question of whether the Ovanova entities have Article III standing before briefly discussing the merits.

A. <u>Standing</u>

Article III of the Constitution limits the jurisdiction of the federal courts to resolving "Cases" or "Controversies."  U.S. Const. art. III, § 2, cl. 1.  A party's standing "is an essential and unchanging part of the case-or-controversy requirement of Article III."  <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992).  To have standing, a party must, at a constitutional minimum, meet the following criteria.  First, the plaintiff "must have suffered an 'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'"  <u>Id.</u> (quotation marks and citations omitted).  Second, "there must be a causal connection between the injury and the conduct complained of — the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  <u>Id.</u> (citations omitted).  Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  <u>Id.</u> at 561 (citation omitted).  A "deficiency on any one of the three prongs suffices to defeat standing."  <u>U.S. Ecology, Inc. v. U.S. Dep't of Interior</u>, 231 F.3d 20, 24 (D.C. Cir. 2000).

Plaintiffs' explanation of their purported injury is largely set forth in one scant paragraph in their Complaint.  That paragraph states in full:

> Plaintiffs have standing to bring this action, as they meet the requirements of injury-in-fact, causation, and redressability. Plaintiffs have suffered concrete and particularized injuries, including direct financial losses of approximately $100 million due to the denial and rescission of REAP grants, operational costs and disruptions amounting to $2 million resulting from the USDA's actions, loss of business opportunities and partnerships estimated at $500 million, and reputational damage affecting future business prospects. These injuries are directly traceable to the USDA's actions in denying and rescinding REAP grants, as well as the agency's inconsistent and arbitrary application of evaluation criteria. The relief sought in this lawsuit, including the setting aside

4

>of the USDA's decisions, declaratory judgment, and mandamus, would directly redress the plaintiffs' injuries by allowing for a fair re-evaluation of their REAP grant applications and restoring their grant funding.

Compl., ¶ 52. It is undoubtedly true that financial and reputational injuries can confer Article III standing. See Twin Rivers Paper Co. LLC v. SEC, 934 F.3d 607, 616 (D.C. Cir. 2019) (financial injuries); McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S., 264 F.3d 52, 57 (D.C. Cir. 2001) (reputational injuries). The problem is that the Complaint is insufficiently specific about the nature of the harms, how those harms are caused by USDA's alleged actions, and whether success in this lawsuit can provide relief.

Consider first the nature of the harms. Plaintiffs assert that USDA's practices inflict economic injuries but never describe those alleged injuries in any detail. The Ovanova entities state, vaguely, "The denials of Plaintiffs' REAP grant applications, and the [rescission] of [a particular] grant award, have had a substantial impact on the company's projects and the rural communities they aimed to serve." Compl., ¶ 63. Attempting to elaborate on that bare statement, the Complaint also declares that Defendants' decisions "jeopardize substantial tax benefits and the economic viability of the renewable energy projects Plaintiffs had proposed." Id., ¶ 63; see, e.g., id., ¶¶ 68, 105, 108–117.

It is critical to bear in mind that Plaintiffs themselves are not the applicants. They never explain, moreover, precisely what financial injuries they suffer when USDA denies other entities' grant applications. And, of course, they have no standing on behalf of "rural communities." Their own claims of economic harms are purely conclusory, lacking any supporting statements describing their asserted "direct financial losses," "operational costs and disruptions," or lost "business opportunities and partnerships." Id., ¶ 52. To put a finer point on it, the Ovanova entities do not make clear what they (as opposed to their clients, the actual

5

applicants) have lost out on as a result of Defendants' alleged conduct. Plaintiffs do not discuss which aspects of their own businesses are jeopardized or even how they earn an income from assisting clients with REAP grant applications. They do not, for instance, provide examples of the operational costs they have had to incur or name a single business opportunity they have lost after USDA allegedly changed its approach to evaluating granting applications. Without such allegations or other clarifying statements in the Complaint or other attached materials, the Court cannot determine what injuries the Ovanova entities are purportedly suffering. It therefore concludes that Plaintiffs have not sufficiently substantiated their claims of economic injuries.

    That leads the Court to Plaintiffs' related suggestion that USDA's practices harm their reputations. Reputational harm can give rise to a cognizable injury under certain circumstances, including if the harm causes a "loss of clients or other business" — *i.e.*, economic injury. See Morgan Drexen, Inc. v. CFPB, 785 F.3d 684, 692–93 (D.C. Cir. 2015). In support of their claim of reputational injury, Plaintiffs declare that "the reputational damage resulting from project cancellations or delays could severely impact the plaintiffs' ability to secure future partnerships and business opportunities, with potential losses estimated in the hundreds of millions of dollars." Compl., ¶ 114. Elsewhere, they complain that they have "suffered severe reputational damage, including destruction of reputation due to presentation of failure letters, resulting in an estimated $2 billion in losses over nine years of 100% customer satisfaction being compromised." Id., ¶ 122.

    As with injury in fact, however, the Ovanova entities do not substantiate those figures, explain how their stature among their industry will suffer, or explain why any reputational damage would lead to economic loss. Nor do they provide specific allegations that they have fallen from grace in the eyes of particular prospective clients. The Complaint hints at some

answers to these mysteries, but it falls well short of the detail and clarity that courts require. Plaintiffs' "[v]ague [and] conclusory" assertions of reputational harm are thus insufficient to establish injury in fact. See Morgan Drexen, 785 F.3d at 692.

Plaintiffs' only fleshed-out claims of injury relate to the grant applicants themselves. The Ovanova entities, for instance, describe specific grant denials and rescissions to certain applicants, and they provide numerous details about how those applicants have been negatively affected by USDA's evaluation criteria. See, e.g., Compl., ¶¶ 66, 71, 76, 85. But regardless of how particularized and concrete those injuries might be, they concern only Plaintiffs' clients, who are not involved in this lawsuit. Plaintiffs do not connect how applicants' alleged injuries have any bearing on whether they have standing to bring this case.

That conclusion is true notwithstanding the Ovanova entities' fallback argument that they should be able to assert third-party standing on behalf of the grant applicants. See ECF No. 29 (Opp.) at 8–9. To assert the rights of a third party, a plaintiff "must have a close relation to the third party," and "there must exist some hindrance to the third party's ability to protect his or her own interests." Powers v. Ohio, 499 U.S. 400, 411 (1991). Plaintiffs assert, again in conclusory fashion, that their relationships with REAP applicants "go beyond ordinary commercial interactions" and are "analogous to . . . attorney-client relationships." Opp. at 9. Nothing in their Complaint, however, describes the nature of the Ovanova entities' commercial relationships, much less supports their questionable suggestions that their contractual arrangements are more than standard vendor-vendee relationships or that the grant applicants cannot assert their own rights. Cf. Powers, 499 U.S. at 413–15 (describing requirements for third-party standing to be appropriate). The Court accordingly rejects Plaintiffs' contention that they have standing to sue on behalf of their clients.

While Plaintiffs' standing problems begin with injury in fact, they do not end there. The Complaint is also deficient in establishing that their injuries are fairly traceable to USDA's alleged reliance on arbitrary and capricious criteria. The Court instead is left to speculate about the nature of the Ovanova entities' business relationships with their clients and how USDA's alleged conduct might affect those relationships. Do Plaintiffs, for example, receive payment only if the client's grant application is approved? Alternatively, do they earn their keep by receiving contracts to build the renewable-energy projects once their clients' applications are approved? Do they fear that they will lose business if word gets around that their applications are now being rejected more frequently than applications submitted by others? If Plaintiffs have information that would establish how USDA's actions inflict harm on themselves — not merely on their clients — they must provide those particulars in the Complaint.

By the same token, Plaintiffs have not demonstrated that any of their alleged injuries would be redressed by a favorable outcome in this litigation. Based on the Complaint, there appears to be an abundance of intermediate steps — controlled by a slew of independent third parties — standing between USDA's decision on a grant application and the Ovanova entities' business operations. It is far from clear that, even were Plaintiffs to receive the relief they request in this suit, they would be spared the economic and reputational consequences they claim.

One could hypothesize about what Plaintiffs' injury might be, the means by which it may be caused by USDA's alleged actions, and how a favorable ruling could redress that injury. Indeed, Plaintiffs offer some suggestions in their Opposition to USDA's Motion. The Court, however, is "not bound to . . . accept inferences drawn by plaintiffs if such inferences are

8

unsupported by the facts set out in the complaint," Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations and quotations omitted), or in sworn materials attached to their Opposition.

> While we must presume that general allegations embrace those specific facts which are necessary to support the claim, we are not required to fill in critical *lacunae* in [Plaintiffs'] allegations. This is particularly true where, as here, those facts are uniquely within [Plaintiffs'] knowledge, and therefore failure to allege them with sufficient specificity to provide notice of the precise basis for standing to maintain this suit cannot be overlooked.

Nat'l Wrestling Coaches Ass'n v. U.S. Dep't of Educ., 263 F. Supp. 2d 82, 108 (D.D.C. 2003) (citations and quotation marks omitted). Plaintiffs' Complaint leaves much unanswered, and it is not the Court's role to fill in the blanks.

Plaintiffs, in short, must reap what they have sown. Because the Ovanova entities have not "affirmatively" demonstrated standing in the Complaint, the Court must dismiss it for lack of jurisdiction. FW/PBS Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (holding plaintiff carries burden to "affirmatively" and "clearly" plead standing). Because of this conclusion, the Court need not address Defendants' alternative argument that Plaintiffs do not fall within the REAP statute's zone of interests.

B. Exhaustion and Mandamus

Even if Plaintiffs had adequately pled standing, their claims would face other obstacles.

First, as Defendants point out, Plaintiffs have not fulfilled REAP's mandatory exhaustion requirement. Litigants seeking to challenge grant decisions made under REAP must comply with 7 U.S.C. § 6912(e), which provides that "a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against" the USDA. In other words, the Ovanova entities were obligated to pursue a set of internal USDA appeals before bringing this lawsuit in court.

See 7 C.F.R. § 4280.105 (setting out appeal procedures); id. pt. 11 (same). That requirement, though "nonjurisdictional," is undoubtedly "mandatory." Munsell v. Dep't of Agric., 509 F.3d 572, 580 (D.C. Cir. 2007).

Plaintiffs do not dispute that they never satisfied the statute's exhaustion requirement. See Opp. at 10–12. They instead maintain that heeding that requirement would have been "meaningless." Id. at 10. Plaintiffs are correct that litigants can sometimes justify noncompliance with an exhaustion provision if adherence would have been futile. But "[i]n this Circuit, the exceptions for futility and inadequacy are narrowly construed, as the exhaustion requirement 'may be waived only in the most exceptional circumstances'" — which a plaintiff bears the burden of demonstrating. Douglass v. Dist. of Columbia, 750 F. Supp. 2d 54, 61 (D.D.C. 2010) (quoting Commc'ns Workers of Am. v. AT&T, 40 F.3d 426, 432 (D.C. Cir. 1994)). Such exceptional circumstances exist only when there is "certainty of an adverse decision" and "resort to administrative remedies is clearly useless." Commc'ns Workers of Am., 40 F.3d at 432 (quotation marks omitted).

Plaintiffs allege that USDA instructed them to "bypass the appeals process" and that, in any case, the evaluations' outcomes were "predetermined" given the "inconsistent application of criteria." Compl., ¶ 41. Neither assertion is sufficient to establish futility. First, the Ovanova entities claim that USDA instructed them to "refrain from pursuing the standard appeals process" because "such an approach would have resulted in a significantly protracted timeline compared to the alternative of resubmission." Id., ¶ 36. Any such statement from USDA, however, cannot reasonably be construed as a command to "circumvent the established appeals process," id., ¶ 38, by filing litigation. Nor could it be interpreted as a statement that exhaustion would certainly be useless; instead, it simply encourages resubmission. Second, Defendants' alleged "inconsistent

application of criteria," id., ¶ 41, necessarily means that the outcome of any grant application or appeal would be the opposite of predetermined.  Indeed, elsewhere in Plaintiffs' Complaint, they emphasize the "uncertainty" that has been injected into the REAP application-review process. Id., ¶¶ 73, 106, 113, 152, 159.  The Ovanova entities cannot now argue that an administrative appeal undoubtedly would have ended in failure.

Plaintiffs' new justification raised in their Opposition — that REAP projects face such tight deadlines that any administrative delay would sound the death knell for their viability, see Opp. at 11–12 — also does not meet the high bar for forgiving noncompliance with an exhaustion requirement.  Even accepting *arguendo* Plaintiffs' dubious premise that litigation in the federal courts is quicker than an agency appeal, our Circuit has made clear that excusing noncompliance is appropriate only when the outcome of an administrative appeal will certainly be adverse — not when the appeal may well be lengthy.  Plaintiffs' APA claims thus would topple on the merits for failure to exhaust.

As for Plaintiffs' mandamus claim, Defendants again correctly note that the Ovanova entities have not satisfied the stringent conditions for demonstrating entitlement to that relief.  In particular, a plaintiff can receive mandamus relief only if, among other requirements, it "has no adequate alternate remedy." Illinois v. Ferriero, 60 F.4th 704, 713 (D.C. Cir. 2023).  As noted, Plaintiffs are entitled to pursue administrative appeals within USDA.  If they are unsuccessful, they can bring an APA claim in court.  Both are eminently adequate remedies that would provide identical relief to what Plaintiffs seek through mandamus review.  To the extent their claims are so time sensitive that an ordinary agency appeal or APA suit would be insufficient, see Opp. at 14, Plaintiffs are free to seek emergency relief, as they have already done once, see ECF No. 5 (TRO Mot.); Minute Order of Nov. 13, 2024, and have sought again.  See ECF No. 31 (PI Mot.).

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: January 30, 2025